Good morning. Thank you very much for your patience. We're happy to hear argument in Holloway v. State of Maryland. I'm Diana Mott and I'm sitting with our newest judge, Judge Rushing, right there. I think she's still our newest. Thank you, Your Honor. Jeremy Greenberg for Appellant Charles Holloway. Reserve five minutes for rebuttal and may it please the court. This appeal involves four errors of law made by the district court. First, the district court erred by applying the evidentiary standard to summary judgment rather than the pleading standard required under Federal Civil Procedure 8. Second, the district court failed to accept Mr. Holloway's allegations as true and failed to provide him with all inferences in his favor when evaluating the sufficiency of his complaint. Third, the district court erred by finding that Mr. Holloway failed to plead sufficient facts to demonstrate claims of race discrimination and retaliation. Fourth, the district court erred by dismissing Mr. Holloway's complaint with prejudice without giving him the opportunity to amend, procure any supposed deficiencies, or stating why an amendment would be vetoed. For these reasons, the court should reverse the dismissal of Mr. Holloway's complaint and remand the case back to the district court so that the parties may engage in discrepancy to substantiate the appellant's allegations. Despite paying lip service to this court's repeated instructions that a complaint is reviewed under Rule 12b6 motion only for the sufficiency of whether it states a claim of relief, the district court analysis of appellant's claims clearly demonstrates that it improperly applied McDonnell Douglas evidentiary standard of review at summary judgment. Throughout the opinion, district court judge Bennett imposed on appellant the burden of establishing evidence and a record in support of the pre-refresher element of his state claims. And that's at pages 42 and 43 of the joint opinions. Establishing evidence and a record is what a party does at summary judgment, not in drafting a complaint. Instead, as this court has repeatedly held, the district court should have reviewed the complaint to determine simply whether it holds factual allegations that rise a right of relief to each of his claims above a speculative vote, which it does. Before I move on to the claims of this case, I want to bring to the panel's attention an unpublished decision by this court on June 24th of this year in Hood-Wilson v. Community College of Baltimore City. That's 850 Federal Appendix 844. In that decision, the court reversed Judge Bennett's dismissal of an unplugged discrimination claim, where his analysis of the allegations in that complaint was remarkably similar in this case. There, the court held that Judge Bennett erred by requiring the plaintiff to plead the pre-refresher elements of her claims, erred by disregarding the plaintiff's own statements about her qualifications, and erred by failing to consider the pled allegations intended to show pretext. If we agree with you that some of the analysis was based on the summary judgment standard, and we applied the correct AB6 standard and came to the same conclusion, would there be grounds for reversal? Your Honor, I believe that based on the review of the complaint, the court would not, and applying the appropriate 12B6 standard, the court would not find the same. I do understand. This is a hypothetical. If we should find that applying the 12B6 standard would come to the same result, we would have to affirm, right? Your Honor. Claims in which we agreed with the holding of the district court, if not the analysis. Yes, Your Honor. The court would be able to dismiss the claims. However, I believe that because the appellant had not been given the opportunity to amend his claims to occur, any deficiencies identified by this report, or if this panel agrees with any of the analysis of this report, that he'd be given the opportunity to amend his pleading to cure those supposed deficiencies, since he was not given the opportunity to do so below, and it was not discussed by the judge why it would be futile if he had amended his claim. Well, can you forecast for me any additions that a complaint would have that would render it valid on any of the claims? Well, Your Honor, I believe... Could you give me an opportunity to amend? Sorry. Sure. Well, Your Honor, as I said before, I believe the allegations themselves are sufficient. However, in amending the complaint, I think it could be cleaned up to sort of differentiate the things at issue. For example, there's the pay discrimination claim, which the plaintiff has combined in his count one of his complaint, which I believe can be separated into a separate method of action. Additionally, there are other facts that I think that can be more streamlined to help the reviewing judge to more easily read the claims that differentiate the claims at issue. Counsel, I'd like to focus on your hostile work environment claim, which is a claim that seems like your client would have most of the information about without discovery. I recognize there could be some things beyond your client's experience that might potentially arise, but your client should, I would think, know that from his experience. This is a racial discrimination claim, and none of the allegations you raise mention any racial slurs or racial language. And I'm not aware of a case that finds either hostile work environment or facts that support it, where there's not anything about the status, be it gender, be it race, that are in the allegations. I know there are a lot of cases out there on hostile work environment, but this seems to fall short of all of them that I saw. What do you think is the best case that helps you in that claim? Well, Your Honor, first off, the client's claims of hostile work environment are both hostile work environment because of his race, as well as hostile work environment because he engaged in protective activities. So, going back to Judge Motz's earlier question in amending the complaint, that would be clarified. As it relates to Your Honor's question, that in the complaint itself, it does describe how in this hostile work environment, that Mr. Holloway is being treated differently than others regarding, in regards to his race. That do not, for example, as it relates to his treatment of Mr. Pindell, he is not being treated the same way as him in regards to how his interactions between him, that Mr. Pindell is undermining his leadership when he's not doing that. Yeah, I don't mean to cut you off, but I appreciate those allegations and see how they relate to your discrimination claim. But the law for a hostile work environment really has a much higher bar under our law. If there's one case you think that's most helpful to you on that claim, what would it be? Well, Your Honor, I believe that first to answer your question, I believe the Parker versus Rema decision I think is probably the most on point. And secondly, I would disagree with Your Honor's statement that as it relates to pleading, a hostile work environment claim that has any higher standard than any other claim under Title VII. Yeah, and I didn't mean to suggest the pleading standard itself was higher. I meant that you still have to plead a plausible claim based on the legal standard for the cause of action. So anyway, OK, I appreciate you identifying that case. Thank you, Your Honor. And as the court in the Parker versus Rema decision itself described, and reviewing those facts allege that all inferences must be reasonably taken from the allegations, including the overall facts that are alleged through the entire mosaic of the facts that are alleged. And those circumstances specifically as identified in the Parker decision, including whether or not there was any physically threatening or humiliating conduct, and whether what was being alleged unreasonably interfered with the employee's work performance. And whether or not the facts or the harassment alleged was occupying or preoccupying the employee or managing their co-workers. All those facts taken together are enough to substantiate the hostile work environment. In this case, Mr. Hollywood's allegations describe how he was treated differently than Mr. Pindell. And then that harassment and different treatment very much escalated after he engaged in protective activity. So much so that management's conduct negatively impacted his ability to do his job and work with his subordinates, publicly humiliated Mr. Holloway on at least one occasion. He's alleged repeated beratements, threats of adverse actions, and then a violent outburst by his direct supervisor, where in that outburst, he directly references his participation in the EEO process. In addition, Your Honor, I'd also like to briefly discuss. And discuss the identification of pretext that plaintiff, I'm sorry, that appellant has identified in his complaint that despite expressly describing why the state reasons for his termination were pretextual, that Judge Bennett, in his decision, improperly found that to be actually dispositive going in favor of Maryland rather than Mr. Holloway. By holding that despite Mr. Holloway perceiving his work as satisfactory, that is the actual perception of management that is relevant to evaluating sufficiency of Mr. Holloway's claim. And in that part of his decision, a district court relies on the case of Evans v. Technology application, which is a decision from the Circuit for Mechanical Access. First, as the district court repeatedly does throughout his opinion, by Evans v. Technology, was a review of a summary judgment decision that's inapplicable to a 12B6 motion. Second, by relying on the state's perception from Mr. Holloway's supervisors regarding his performance, rather than Mr. Holloway's specific allegations regarding what his performance actually was, the district court inherently created a factual inference contrary to appellant's allegations that he was a top performer and regularly received outstanding evaluations from when he was hired through the year of his termination. Moreover, a fact finder's evaluation of an employer's supposed perception is a termination appropriate for a summary judgment or trial, not an evaluation of a complaint. Third, as the court held in Woods v. City of Greensboro, where a plaintiff's complaint includes a defendant's stated reasons for its conduct, quote, Moreover, while not required to do so, Mr. Holloway's complaint also contains allegations that his supervisor's stated reasons for criticizing his job performance and Maryland's ultimate reason for terminating his employment are pretextual. First, after years of positive evaluations, Mr. Holloway began only to be evaluated after engaging in protective activity. Second, one of the stated reasons for Mr. Holloway's termination was supposed budget mismanagement of budgetary issues, even though that was not one of Mr. Holloway's job duties, instead that was the duties of budget officer Nickerson, who is a Cajun individual, and he has not been disciplined or otherwise counseled for these supposed budgetary issues. Additionally, the supposed budget issues that were allegedly justified his termination were identified in April 2018, four months before Mr. Holloway's termination. Maryland's decision to wait four months and taking action on these alleged budget issues only after Mr. Holloway's May 28, 2020 EO complaint is further indicative of pretext. Additionally, Mr. Holloway also supposedly was terminated for low enrollment numbers, but his Caucasian predecessor, Mr. Rose, was not terminated and said simply reassigned after multiple years of low enrollment numbers. I see that my time is about to expire, but if your honors have any further questions, I'm happy to answer them either now or in my development period. Thank you. Thank you very much. Thank you. May it please the court. While a Title VII plaintiff does not need to meet the prima facie evidentiary standard in order to survive a motion to dismiss, the plaintiff must satisfy the elements of a Title VII case and must meet the pleading standards set forth in Twombly and IPPAL, which requires that the plaintiff set forth facts that would establish a plausible entitlement to relief as opposed to a possible entitlement or one that is based solely upon speculation. Counsel, you would agree, wouldn't you, that the summary judgment standard is different than the 12B6 standard? Yes, but I do not agree. Then can I ask you why you cited so many summary judgment cases, leading the district court to also cite so many summary judgment cases? I cited, in order to analyze whether a plausible case has been alleged, obviously the court has to look to what facts need to be proved in the case. And I don't agree that Judge Bennett applied the incorrect standard because if you read his decision... That wasn't the question I asked you. I asked you why you relied on these summary judgment cases. There are plenty of 12B6 cases. There are plenty of race discrimination cases in this circuit and around the country. And it just muddies the record for us and for Judge Bennett. And you do it in this court, too. Well, I think that there... I cited cases that I think are informative or instructive on the question that's before the court. I think this case is controlled by the McCleary-Evans decision. Whether or not this plaintiff has alleged facts supporting a plausible inference, that the actions he complains of were based on his race, is according to the Fourth Circuit. It's a context-specific task that requires the court to draw on its judicial experience and common sense. And when you look at the facts that are alleged, they do not support an inference that this plaintiff has alleged a plausible claim that he's the victim of race discrimination. The facts is alleged... So, counsel, let me follow up on that. The district court talked about the pleadings referencing his performance and that those were his views and not the supervisor's. But as I read the complaint, it looks like he's alleging that he performed adequately based on evaluations from his supervisors. So, it seemed to me it was not his subjective view of his performance as much as it was him reporting the evaluations that he received from his employer. On that issue, doesn't he plead that his employer gave him positive evaluations? Your Honor, he pleads that he was employed from 2014 to 2018. And yes, the first employment evaluations in the first years and actually most of the years that he worked for the Free State Academy were positive. But telling is that the one that he got in the year prior to his termination was negative. So, if we were standing here in a situation where the plaintiff could say, could allege facts such as, I have never received a negative performance evaluation. I was the employee of the year. Those are facts from which would support the argument that there could be an inference of discrimination. But we don't have that here. We have a plaintiff who's alleging that in the year prior to his termination, he got a negative performance evaluation from his supervisors. But counsel, if I could just follow up on Judge Quattlebaum's question. You can also make the argument that he's saying that the assessment in the most recent year was discriminatory because he had had good ratings. And I thought, I read the district court opinion, and perhaps you agree, as suggested, that he was pleading that he was not a competent employee. All he is doing is reporting in his pleadings what his employer decided in the last year, which he disagreed with. Right, because it goes back to... And pointed to the earlier assessments, which he said were honest. Well, it goes to the Iqbal Twombly standard. He has to plead facts. He pleads, I'm an employee. I received a bad evaluation. I was repeatedly counseled that my employer was not satisfied with my performance evaluation. And then he pleads, these are because of race. There's no facts that are pled that would support the filling of the gap of, okay, we have this set of facts that bring to mind the obvious alternative explanation that the agency was not satisfied with his performance. And we have him saying, court, we want you to make an inference that that's racial discrimination. But there's no facts to bridge that gap. Counsel, why wouldn't... I think you're right. I appreciate the Iqbal standard in that regard. But why is not his allegations that the reasons given to him for his substandard performance and ultimately termination were pretextual? And because he gave reasons for that. He said that the enrollment and the budgets were not his job. You know, he said that Caucasian employees were treated different from him in regard to some of those issues. You know, those may or may not be true. He may or may not have had a part of his responsibility, the enrollment and the budgetary issues. But he at least seems to allege that the reasons, the negative reasons given to him were pretextual with some facts in the complaint. So I'm worried a little bit that, you know, that we're going beyond the allegation standard here. Well, in response to that, I would refer the court to the decision in King versus Rumsfeld. Because effectively, the standard that we're here on now at the pleading stage is, has he asserted a plausible claim of discrimination governed by the McClary-Evans case, the Bing case, which just recently came down, in contrast to the Woods case in which the court said that he did. And if he succeeds in stating the plausible claim, then he must establish, move forward to the next step, and either produce a prima facie claim or direct evidence. The issue of pretext doesn't, that doesn't even become an issue until he meets that second hurdle of establishing a prima facie case. The burden shifts to the defendant to be able to say, this is our non-discriminatory reason. And then the burden goes back to the plaintiff to establish pretext. So what's happening here is almost the plaintiff is saying, oh, you're applying the wrong standard at the motion of this phase. You're applying the prima facie standard. But then he himself is asking the court to apply the pretext standard. This case is governed by the holding in McClary-Evans. It's further illuminated by the holding in Woods. It's further illuminated by the recent holding in Breivik. Simply put, do the facts alleged support an inference that is plausible, not possible, and not based on speculation, that the reason this individual was removed was because of his race? He was hired to replace a white program director. That doesn't support an inference of race discrimination. The white program director was removed from the same position for cause. That doesn't support an inference of race discrimination. His employer for some time, for the entire year of 2018, was unhappy with his performance. That's what he alleges. And then he alleges, but in very conclusory fashion, and that was because of my race. And that's where you're talking about speculation being called in to fill the gaps. Because what fact, what fact is offered that supports the conclusion that the termination wasn't because of these other issues that are asserted by yourself in the complaint, that they didn't, that you got a bad evaluation, they were not satisfied with your leadership, they had concerns about where you were during the day, they had a, they initiated a climate survey to ensure that the staff have feelings about management. Instead of, you're supposed to look past all of that, and with no fact to support it, you're supposed to assume that that's because of his race. But counsel, isn't he saying that those very reasons, the climate survey, the inquiry about his location, and then even the grounds about enrollment and the budget were requirements that were imposed on him that weren't imposed on white employees. And so I grant you there's no direct or there's no specific reference where someone said something that it was racially motivated. But is, this is a question, is imposing requirements such as a climate survey, such as a location inquiry on a, for someone who points to evidence that they are performing well, is that not facts from which we could infer discrimination? Well, I would say no because the court has spoken about what type of comparators are sufficient to state a claim of discrimination. Can I follow up on that? If the complaint at the moment does not allege that, couldn't it, couldn't he have added information to the complaint if he'd been committed to amend? When usually we do let people amend complaints. He never, Your Honor, obviously. You don't have to ask for permission to amend. Ma'am, wouldn't you agree with that? Is it your position that you always have to ask for permission to amend? Your Honor, respectfully, I think in this case, when we filed the motion, Is it your position that you have to? It is my position that you have to request leave to amend. But it is, it is my position that having failed to offer any facts, signal any of any additional facts, request or signal that you would amend, move to for leave to amend after the decision or, and frankly, Your Honor, here today, you graciously asked Mr. Greenberg to proffer any additional facts and there were no facts. Well, that may be so, but he's foreclosed. I don't think it would be to your advantage to get out the whole case. Well, I mean, in response to the, you know, the standard for denying leave to amend is abusive. But we don't have motions to amend, so we don't know what that standard is. That standard is not applicable here. And I would just say that, well, I distinguish the case that Mr. Greenberg relied on in his reply because it was a case in which it was a pro se plaintiff and that plaintiff had, had signaled to the court before the final decision was issued that he wanted to amend his complaint. That's true. The case relies on our pro se plaintiffs. But the court, our court has in recent years pulled back from any favoritism we gave to pro se plaintiffs. I'm not sure that that is a fact. I'm not sure it distinguishes. But in the Bribo decision, the court was also gracious. And that was a plaintiff who was pro se. The court also, from my reading of the decision, asked, is there any additional facts that you would be able to allege? And similar to this colloquy today, there were no facts that were put forth that would not, would change this analysis in any way. So I don't think Judge Bennett erred in exercising his discretion when a plaintiff is silent, especially, for instance, on the pay discrimination issue. It was a fact that were alleged in this complaint in support of the retaliation claim and the hostile work environment claim. Can I ask you one final question about the retaliation claim? There, all you need is a good faith belief in discrimination. Surely this complaint demonstrates that. I'm not sure I understand. That's what our, that's what our case law says over and over again. I just think he's, I think Judge Bennett was correct. He's not able to allege facts that would establish a plausible claim of causation. Well, he certainly alleged enough to show his good faith belief that he had been discriminated against when they fired him after he made the complaint. Retaliated against him. But he has to show under, he has to show that he engaged in opposition activity. Yes. Well, calling these complaints, wouldn't you regard that as activity? Yes, Your Honor. Okay, so he's done that. That's conceded. He has to establish that he suffered an adverse employment action. Well, he alleges that. That may not be true, but that's what he alleges. Yes, for purposes of the motion, yes. But then he's got to establish facts upon which the court could conclude that there was causation between the two. And Judge Bennett, citing the case law correctly, found there was no facts that would support a finding of causation. And the causation standard is strict. I just don't really understand the retaliation argument that you're making. Well, I mean, in order to lead a claim of retaliation under Title VII, the plaintiff must establish one that he engaged in opposition activity under Title VII. She has. We agree. He did that. We concede that for purposes of the motion. That he suffered an adverse action, something that would deter an individual from filing complaints. He says he was terminated for purposes of the motion. We agree that that could be an adverse employment action. But the third is the difficult one, and that's to establish that his opposition activity was the reason he was let go. And so he has no direct evidence. As Judge Quattlebaum pointed out, this is not a case where he can say anybody mentioned his race. He was hired for this job by the same counsel. Can you help me with the facts that he has pled to try to establish causation, at least at the motion to dismiss stage? The district court pointed to the timing, and I understand the district court said that it was not close enough. But in that gap, in the timing gap that the district court talked about, plaintiff has alleged that he had this meeting with Teller, who yelled and banged the table and specifically said, I'm aware of your complaints, your grievances, and I'm going to be involved. Why is that not sufficient to bridge the causal gap there at the plausible pleading stage? Well, that fact, again, it's a moving target at this stage. That fact was offered in support of the hostile work environment claim, not the retaliation claim. How do you know that? That's in his complaint. It's in his complaint. I have to read all of the allegations of his complaint. I'm not allowed to pick and choose which ones I believe for which cause of action. I mean, to say that he was fired or he was retaliated against when he sought a meeting with his superior. He asked Mr. Teller if they could meet. And Mr. Teller scheduled the meeting. Mr. Holloway objected to the fact that it was earlier than he usually comes in. And then they had this conversation in which it's a moving target. He first says he slammed the paper on the table. Now, in the briefs, he slammed objects around. I mean, it's not in my opinion. I don't think that I don't know of any case that would hold that's held in this circuit or otherwise, that a meeting between a supervisor and a subordinate that was asked. I guess, counsel, my question is just, you know, even we have cases where we have this time gap and we're trying to figure out is that sufficient to suggest causation at this stage, this early stage. But we have cases where we say, well, we have a time gap that's a little, you know, it's getting on the long end. But we have this additional fact that has been pled. And I'm wondering if this additional fact in the interim is sufficient here. And I would think and I would say affirmatively no. Because it's not, I mean, the meeting itself isn't something that would be characterized as an act of retaliation. I mean, the way I read the case law, and certainly I'm not the expert, is that if you have no direct evidence of supporting retaliation, the kind of evidence that Judge Quattobam, you know, usually you see in these types of cases, then you can still survive the motion dismissed if you can do it on temporal proximity. And so he was really, that's all he had. And really, that's all he argued was the temporal proximity. But in this case, it's interesting because his first complaint of discrimination was six months before. So the way that the court interpreted the facts was even conservative in favor of the plan. Instead of saying, well, if you're alleging that you were fired for making a complaint of discrimination, you made one in February of 2018, you were fired until August. The court still said, even considering the subsequent ones, which again, to me, you know, even considering the last one, it's still three months, which is too much time to infer that that is, that you've stated a claim of retaliation. Oh, so you're fired. Unless one of my colleagues has another question, I ask you to summarize and cease. Thank you. I would, you know, I'm happy to submit on my papers if there's any question that I'd be happy to answer. Thank you very much. Thank you. Is there any rebuttal? Yes, Your Honor. Thank you. Your Honor, I would just like to address a few points. First, to clarify the factual record of alleged in the complaint. I believe my opposing counsel stated that Mr. Holloway's predecessor was terminated for cause. That is not a complaint that was alleged in the complaint. Instead, what is specifically alleged is that in lieu of being terminated, that Mr. Holloway's predecessor, Mr. Rose, he was, in fact, given another position. Secondly, another point is that during his argument, he very much relied on the case of King v. Rumsfeld to get both of the points. However, yet again, as Judge Monts noted earlier, that is yet another summary judgment review decision. So, again, the state of Maryland is repeatedly trying to have the court review the pleadings of this case based on summary judgment standards review where there are a factual record that a court or jury can later review. Counsel, on that point, I think it is fair that if you cite a summary judgment case at a 12B6 standard, we need to be really careful that we are looking at it not applying the wrong standard. But summary judgment cases that state the law can inform what facts must be plausibly pled. I don't think the fact that a case is a summary judgment case automatically means we can't consider it if it helps us inform the law. The problem we get in is if we mix or match the standards and aren't real clear with what we're doing. Would you agree with that? I absolutely would agree with that, Your Honor. And I think that is exactly what Judge Bennett did below, where he is mixing the standards despite paying lip service to the 12B6 in his standard review section. So, for example, on your hostile work environment claim, if we look at the cases that talk about that, the 12B6 cases and the summary judgment cases that impose a level of conduct that is more than discriminatory. It's got to be so intolerable that you're essentially constructively terminated. You then have to plead facts that satisfy that standard, correct? Well, Your Honor, I would disagree with your summary of what the standard is to establish a hostile work environment. It doesn't have to be so intolerable that it causes you to resign. It just has to be for race discrimination to be severe, pervasive, to, in fact, to affect your terms and conditions for employment, and for a retaliation claim that it reasonably displayed from engagement with collective activities. But I would agree that the court can look to cases just to describe elements of those claims, but make sure that they are applying the proper standard of 12B6, particularly in a hostile work environment claim where this court has repeatedly instructed reviewing court for lower courts that they must view the totality of the circumstances alleged with all inferences in employee's favor, and particularly where the conduct is such that there's allegations of public humiliation, threats, and even just particularly when it's done by a supervisor, which I believe were fled in this case. And just to address the causal connection discussion that was addressed at the entail of the last discussion. First off, as it relates to the temporal proximity issue, as it relates to reviewing motion to dismiss, this court has found that just that three, four months is sufficient at the motion to dismiss stage to say a claim of retaliation. At summary judgment, a plaintiff will need to show more beyond mere temporal proximity to establish those claims. However, at a review in the pleadings, this court has approved of three and four months gap in time. In addition to that gap of time, though, in this case, the complaint does also discuss Mr. Teller's express comments describing the impact that the EEO complaint will have on himself, and thus reference it during the interim between Mr. Holloway's last complaint and the termination, as well as pleading those facts that demonstrate pretext and thus without inferences in his favor that the real reason for his termination was not as stated, but in fact was retaliatory or discriminatory. And I see that my time is up. Thank you very much for your argument. We appreciate it for both of you. We will take the case under consideration.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Allison J. Rushing